HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARK ALAN HAYS,

    Plaintiff,

v.

SHANE ANDERSON, et al.,

    Defendants.

CASE NO. C09-98RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on the Defendants' motion for summary judgment (Dkt. # 32). Neither the Plaintiff nor Defendants requested oral argument, and the court finds the motion suitable for resolution on the basis of the parties' briefing and supporting evidence. For the reasons explained below, the court GRANTS the Defendants' motion (Dkt. # 32).

## II. BACKGROUND[1]

On November 23, 2007, Plaintiff Mark Hays was walking on University Way in Seattle's University District. While in the neighborhood, he met Michael Lujan for the

---

[1] This description of the facts elaborates upon the background section included in the court's previous order (Dkt. # 49).

ORDER – 1

first time, and together they improperly crossed an intersection against the traffic light. While Mr. Hays and Mr. Lujan were in the crosswalk, an unmarked car containing four Seattle Police Department officers, including Officers Thomas Hanley and Jonathan Huber, drove into the crosswalk, directly in front of Mr. Lujan.

Mr. Hays continuing walking across the street, away from the police officers' car, but Mr. Lujan stopped to talk with the officers. After Mr. Lujan gestured for Mr. Hays to return, Mr. Hays again entered the crosswalk. After this point, there are two versions of the facts. According to Mr. Hays, the police officers took him to the ground for no apparent reason:

> Just over half-way across University, I was suddenly taken to the ground by physical force. I was on my side for a few seconds before someone unidentified to me, forced me to my stomach and straddle my shoulders. This person then began vigorously slamming my forehead area to the pavement. I had no idea who this person might be, until I felt a second person move and hold my wrists behind my back, which led to me to assume that they were probably policemen. I was stunned by the front impacts to my head, and quite unable to even move my hands around me to protect my head from the pavement. I knew my head was being badly injured, so I lay limp, hoping that the head-slamming would stop. The man continued to slam my head to the ground over and over. I was completely overwhelmed and had no recourse against the assault. At one point, I was able to look to the curbside, and saw a girl who was watching. I gave her a plaintive look to encourage her assistance, and indicate that I was entirely helpless. I saw her put her cell phone to her ear, then returned my head to the ground. I felt more punching and kicking and my head was slammed down several more times. In shock, I did nothing but lay motionless, waiting for the senseless attack to end.

First Amended Complaint (Dkt. # 8-2), at 5-6.

The police officers describe the incident differently. *See* Hanley Decl. (Dkt. # 33), Ex. A. According to the police statement form, after witnessing the jaywalking, the officers initially talked with Mr. Hays and Mr. Lujan through an open car window and identified themselves as police officers. They informed the two that their crossing was

ORDER – 2

illegal, and then Officer Hanley exited the vehicle to further discuss the matter. Mr. Lujan ran away from Officer Hanley, and Officer Huber pursued him. Mr. Lujan then changed directions and ran toward Officer Hanley, and the officer wrapped his arms around Mr. Lujan and attempted to force him to the ground. Officer Hanley claims that he told Mr. Lujan that he was under arrest, but Mr. Lujan resisted and attempted to break free.

While Officer Hanley was struggling to get Mr. Lujan to the ground, Mr. Hays tackled him from behind and took him down to the ground. Officer Hanley was trapped on the ground under Mr. Hays, while Officer Edward Hagerty took control of Mr. Lujan and Officer Huber came to assist Officer Hanley. Officer Hanley was on the ground with Mr. Hays's torso stretched across his upper legs. In order to extricate himself from Mr. Hays, Officer Hanley "repeatedly punched" Mr. Hays in the left thigh. Hanley Decl., Ex. A. Officer Hanley was then able to get out from under Mr. Hays and regained a standing position. From that vantage point, Officer Hanley saw that Mr. Hays was resisting Officer Huber's efforts to get his hands out from under him. Officer Hanley then "resumed punching Hays repeatedly with my closed right fist in his left kidney area," and eventually dislodged Mr. Hays's left hand. *Id*. Mr. Hays's left hand remained under his body, despite Officer Huber's attempts to pull it free. Officer Hanley "began using repeated knee strikes to [Mr. Hays's] torso/stomach area on his left side" until the officers were able to pull Mr. Hays's right hand behind his back and handcuff him. After Mr. Hays was handcuffed, he made no further efforts to resist. Officer Hanley's statement also mentions that Mr. Hays's breath smelled of alcohol and he appeared intoxicated. *Id*.

Based on this incident, Mr. Hays was charged with assaulting a police officer and obstructing a police officer, and convicted on both charges. Mr. Hays appealed the convictions, and the Washington State Court of Appeals affirmed.

ORDER – 3

Mr. Hays then filed this lawsuit, and the only claims now remaining are against Officers Hanley and Huber for excessive force. The officers have moved for summary judgment.[2]

### III. ANALYSIS

#### A. Standard of Review on Summary Judgment.

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, or that there is an absence of evidence supporting an essential element of the non-moving party's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets that initial burden, the opposing party must then set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The issue of fact must be genuine; mere disagreement about a material fact is not sufficient. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-7 (1986).

#### B. The Plaintiff's Excessive Force Claims are Barred Under the *Heck* Doctrine.[3]

Section 1983 creates a remedy for violations of constitutional and other federal rights committed by defendants who act under color of state law. *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005). The Constitution protects a suspect from a police officer's use of excessive force. *See Graham v. Connor*, 490 U.S. 386, 395 (1989).

---

[2] Mr. Hays's Opposition to this motion was due on January 4, 2010. On January 11, Mr. Hays filed a motion for extension of the response deadline (Dkt. # 42), claiming confusion regarding the interplay between noting dates and notices of unavailability, and filed an untimely Opposition (Dkt. # 44) the following day. The Defendants opposed the motion for extension and moved to strike the untimely Opposition. Though the court does not excuse Mr. Hays's failure to abide by court deadlines, the court nonetheless GRANTS Plaintiff's motion (Dkt. #42) and DENIES the Defendants' motion to strike (Dkt. # 46) due to the court's strong preference for considering a claim's merits.

[3] Because the court concludes that *Heck* bars all claims remaining in this case, the court need not consider the Defendants' alternative grounds for summary judgment.

ORDER – 4

But, if the suspect is later convicted of a crime and the conviction has not been invalidated, the suspect cannot pursue a Section 1983 claim if that claim would "necessarily imply the invalidity of his conviction or sentence." *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). If the Section 1983 claim would succeed only by negating "an element of the offense of which he has been convicted," then the plaintiff's Section 1983 claim is barred. *Id*. at 487 n.6 (describing an example of this circumstance).

The Ninth Circuit applied the *Heck* doctrine to a Section 1983 claim for excessive force in *Cunningham v. Gates*, 312 F.3d 1148 (9th Cir. 2002). In that case, the plaintiff was shot by police as he left the scene of a robbery. He claimed the police started shooting at random, but the police contended that they fired shots at the plaintiff because he fired first. The plaintiff was convicted in state court of, *inter alia*, attempted murder of the police officers. The plaintiff then filed Section 1983 claims against the police officers for excessive force, but the court found that those claims were barred by the plaintiff's conviction for attempted murder:

> [T]here was no break between Cunningham's provocative act of firing on the police and the police response that he claims was excessive. Indeed, in convicting Cunningham of felony murder, the jury concluded that the police response was a natural consequence of Cunningham's provocative act. Because the two are so closely interrelated, Cunningham's conviction forecloses his excessive force claim against the [police] officers.

*Cunningham*, 312 F.3d at 1155.

The Fifth Circuit also recently applied the *Heck* doctrine to an excessive force claim, in a case more factually analogous to this case. In *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007), the court recited the plaintiff's version of the underlying facts: A police officer arrived at the plaintiff's home after his wife called for assistance during a domestic dispute. The officer asked the plaintiff to step outside, but the plaintiff protested. The officer then sprayed him in the face with chemicals and swung at him with a baton. The plaintiff grabbed the baton and the two men began

ORDER – 5

fighting over the baton. The plaintiff caught the officer in a bear hug on his knees, but eventually let go of him and backed away with his hands up. The officer then shot at the plaintiff at least four times.

The plaintiff was charged with aggravated assault of a police officer and pleaded guilty. *See id.*, 488 F.3d at 651. The plaintiff later brought, *inter alia*, an excessive force claim against the officer, and he argued that it was not barred by *Heck* because "his conviction would not be invalidated by his proving that excessive force was used well after the need of it had ceased." *Id.*, 488 F.3d at 656. But the court found that that argument was not supported by the plaintiff's complaint, wherein his allegations suggested that the officer had no need to use force at all:

> [T]he complaint maintains that [the plaintiff] did nothing wrong, that he simply defended himself, against mace, baton, and then gun, as the violence escalated. . . . There is no alternative pleading or theory of recovery that would allow this claim for excessive force to proceed without interfering with the Texas proceeding against [the plaintiff] for aggravated assault on an officer. Rather it is presented as a single violent encounter throughout which [the officer] used excessive force. . . . [The plaintiff's] excessive force claim is that "he was unlawfully assaulted, and physically beaten and shot by [the officer.]"

*DeLeon*, 488 F.3d at 656-57.

In both *DeLeon* and in this case, the plaintiffs allege that police officers assaulted them for no reason and that the officers' use of force was therefore excessive. In *DeLeon*, such a contention contradicted the plaintiff's guilty plea to the aggravated assault charge, because he could not have both committed aggravated assault against the officer and been the victim of the officer's unprovoked use of force. Likewise, Mr. Hays's allegations that police officers assaulted him for no reason while he remained limp, helpless, and motionless contradict his convictions for assaulting and obstructing a police officer: he cannot have both remained limp and motionless and, at the same time, assaulted a police

ORDER – 6

officer. Thus, so long as Mr. Hays's convictions remain valid,[4] they bar his excessive force claims.

### III. CONCLUSION

For the reasons stated above, the court GRANTS Defendants' motion (Dkt. # 32).

DATED this 5th day of February, 2010.

　　　　　　　　　　　　　　　　　　　　　　　　　　
The Honorable Richard A. Jones
United States District Judge

---

[4] Mr. Hays requested that if the court concludes that *Heck* applies, the court should stay (rather than dismiss) his excessive force claim pending the resolution of his personal restraint petition pending in state court. *See* Pltf.'s Opp'n (Dkt. # 44) at 4-5. But a personal restraint petition challenges conditions of confinement, not the underlying conviction; Mr. Hays's convictions have already been affirmed on appeal, and he confirmed that his convictions are valid. *See* Pltf.'s Opp'n at 4 (stating that the validity of his criminal convictions is not challenged). Thus, the pending personal restraint petition bears no relevance to *Heck*'s application.

ORDER – 7